IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | | |
|---|---|---|
| JIMI CURB, | § | |
| Plaintiff, | § § § | |
| v. | § § | 2:15-CV-351 |
| BARRY MARTIN, et al., | § § § | |
| Defendants. | § § | |

### FINDINGS, CONCLUSIONS AND RECOMMENDATION
### TO DISMISS CIVIL RIGHTS COMPLAINT

Plaintiff JIMI CURB, acting pro se and while a prisoner incarcerated in the Texas Department of Criminal Justice ("TDCJ"), Correctional Institutional Division, has filed suit pursuant to Title 42, United States Code, Section 1983 complaining against the above-referenced defendants and has been granted permission to proceed in forma pauperis. For the following reasons, plaintiff's civil rights complaint should be DISMISSED.

### I.
### JUDICIAL REVIEW

When a prisoner confined in any jail, prison, or other correctional facility brings an action with respect to prison conditions under any federal law, the Court may evaluate the complaint and dismiss it without service of process, *Ali v. Higgs*, 892 F.2d 438, 440 (5th Cir. 1990), if it is frivolous[1], malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A; 28 U.S.C. §

---

[1] A claim is frivolous if it lacks an arguable basis in law or in fact, *Booker v. Koonce*, 2 F.3d 114, 115 (5th Cir. 1993); *see, Denton v. Hernandez*, 504 U.S. 25 (1992).

1915(e)(2). The same standards will support dismissal of a suit brought under any federal law by a prisoner confined in any jail, prison, or other correctional facility, where such suit concerns prison conditions. 42 U.S.C. § 1997e(c)(1). A *Spears* hearing need not be conducted for every *pro se* complaint. *Wilson v. Barrientos*, 926 F.2d 480, 483 n.4 (5th Cir. 1991).[2]

The Magistrate Judge has reviewed plaintiff's pleadings and has viewed the facts alleged by plaintiff to determine if his claim presents grounds for dismissal or should proceed to answer by defendants.

## II.
## PLAINTIFF'S CLAIMS

Plaintiff seeks monetary relief and punitive damages for what he alleges was improper medical care that he received while housed at the Clements Unit of TDCJ. Plaintiff also seeks the Court to issue an order requiring TDCJ to provide him with stent surgery for his legs, as outlined below.

Plaintiff states he developed deep vein thrombosis ("DVT") while incarcerated in TDCJ. Plaintiff also states that he has been diagnosed with liver disease and chronic obstructive pulmonary disease ("COPD"). Beginning in 2012, plaintiff began to experience circulatory problems in his lower legs due to his DVT. This condition, or a cumulation of his chronic health conditions, resulted in chronic episodes of ulcers developing on his lower limbs and feet. Each time plaintiff developed ulcers, he also developed inflammation; the ulcers and inflammation would require weeks of treatment to clear up, and he would experience intense pain during this time.

---

[2] *Cf*, *Green v. McKaskle*, 788 F.2d 1116, 1120 (5th Cir. 1986) ("Of course, our discussion of *Spears* should not be interpreted to mean that all or even most prisoner claims require or deserve a *Spears* hearing. A district court should be able to dismiss as frivolous a significant number of prisoner suits on the complaint alone or the complaint together with the *Watson* questionnaire.").

Plaintiff states that the best and most appropriate form of treatment for DVT is intravenous stents placed in the legs through surgery. Plaintiff made requests of medical personnel with TDCJ to have stents placed in his legs in 2015 prior to the filing of this lawsuit. By his suit, plaintiff is suing TDCJ officials and medical personnel whom he claims denied him this treatment for improper reasons; namely, plaintiff claims he is receiving inadequate medical treatment due solely to cost considerations and not actual medical determinations.

Specifically, plaintiff has sued seven individuals employed as medical staff with TDCJ, including two doctors and five nurses. Plaintiff states defendants SCHOONOVER, COOPER, CHAVEZ, TURNER, and THOMAS were the nurses responsible for the care of his ulcers and DVT condition. As stated in the complaint and the accompanying *Watson* questionnaire ordered by the Court, some of these nurses advised plaintiff to amputate his feet as a treatment for his condition. Plaintiff states these nurses gave this advice and also that several nurses told plaintiff he would not receive stents in his legs "because it was too expensive." Plaintiff states that defendant doctors LEEAH and CALDWELL both denied him stent surgery because the cost was too prohibitive and not because of sound medical decisions. Additionally, plaintiff sued TDCJ officials who "rubber stamped" his medical treatment through the denial of his grievances.

### III.
### THE LAW AND ANALYSIS

A. Plaintiff's claims against medical personnel

"A prison official violates the Eighth Amendment's prohibition against cruel and unusual punishment when his conduct demonstrates deliberate indifference to a prisoner's serious medical needs, constituting an 'unnecessary and wanton infliction of pain.' " *Easter v. Powell*, 467 F.3d 459, 463 (5th Cir. 2006) (quoting *Wilson v. Seiter*, 501 U.S. 294, 297, (1991)). "[A] prison inmate can demonstrate an Eighth Amendment violation by showing that prison officials

refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Sama v. Hannigan*, 669 F.3d 585, 590 (5th Cir. 2012) (citation and quotation marks omitted). A prison official acts with deliberate indifference "only if (A) he knows that inmates face a substantial risk of serious bodily harm and (B) he disregards that risk by failing to take reasonable measures to abate it." *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006) (citing *Farmer v. Brennan*, 511 U.S. 825, 847 (1994); *see also Reeves v. Collins*, 27 F.3d 174, 176–77 (5th Cir. 1994)). "Unsuccessful medical treatment, acts of negligence, or medical malpractice do not constitute deliberate indifference, nor does a prisoner's disagreement with his medical treatment, absent exceptional circumstances." *Gobert*, 463 F.3d at 346. A plaintiff must show that "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837.

"Deliberate indifference is an extremely high standard to meet." *Domino v. Tex. Dep't of Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 2001); *see also Hernandez v. Tex. Dep't of Protective & Regulatory Servs.*, 380 F.3d 872, 882 (5th Cir. 2004) ("We begin by emphasizing that our court has interpreted the test of deliberate indifference as a significantly high burden for plaintiffs to overcome."). "Medical records of sick calls, examinations, diagnoses, and medications may rebut an inmate's allegations of deliberate indifference." *Banuelos v. McFarland*, 41 F.3d 232, 235 (5th Cir. 1995) (citing *Mendoza v. Lynaugh*, 989 F.2d 191, 193-95 (5th Cir. 1993). The applicable *mens rea* of deliberate indifference demands subjective knowledge of a substantial health risk. *See Farmer*, 511 U.S. at 847.

"The denial or delay of necessary medical treatment for financial or other improper motives not based on medical reasons may constitute an Eighth Amendment violation." *Hanna v. Corrections Corporation of America*, 95 Fed.Appx. 531, 532 (5th Cir. 2004). However, the deliberate indifference standard "does not guarantee prisoners the right to be entirely free from the cost considerations that figure in the medical-care decisions made by most non-prisoners in our society." *Morris v. Livingston*, 739 F.3d 740, 748 (5th Cir. 2014), *cert. denied* --- U.S. ---, 134 S.Ct. 2734, 189 L.Ed.2d 772 (2014). The "failure to receive the most effective treatment *cannot* form the basis of deliberate indifference but, rather, sounds in negligence." *Gobert*, 463 F.3d at 350 n. 33.

The Court finds plaintiff has failed to state a claim for deliberate indifference against the TDCJ doctors and nurses he has sued. Although the Court will accept as true for purposes of its analysis today that the insertion of stents in plaintiff's legs may be the most appropriate treatment for DVT and further that the doctors and nurses with TDCJ actually advised amputation of his limbs in the alternative to this superior medical treatment, this only states a claim for medical malpractice or negligence. Plaintiff's complaint and his responses to the *Watson* questionnaire show that the doctors and nurses provided him special stockings for his legs, lotions, prescriptions, wound care and offered surgical intervention (albeit surgery the plaintiff understandably wanted to avoid). Such treatment constitutes medical care for his condition such that plaintiff has failed to allege deliberate indifference to his serious medical needs.

This Court agrees that plaintiff has a condition, DVT, and has other conditions (liver disease and COPD) causing severe ulcers to form on his feet that if left untreated would pose a serious risk to his health. However, plaintiff has not alleged that TDCJ has left his conditions

untreated. Rather, plaintiff strenuously disagrees with the type of treatment he is receiving at TDCJ and believes he is being denied medical treatment due solely to cost considerations. Although the Court would note that amputation, and the resulting housing and provisions needs to care for an amputee would also create high surgical costs, the Court will accept as true plaintiff's statements that stents in his legs is the preferred treatment for his condition by doctors outside of TDCJ and would not result in the amputation of plaintiff's legs. However, it is not a constitutional deprivation to receive medical treatment that does not satisfy the plaintiff's preferred course of treatment. Rather, plaintiff must show that the treatment he received was the result of a deliberate *mens rea* on the part of the doctors and nurses to "ignore his complaints, intentionally treat him incorrectly, or engage in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *See Sama*, 669 F.3d at 590.

B. <u>Plaintiff's claims against TDCJ officials</u>

Plaintiff also sues defendants MARTIN, DAVID, and BEACH for failing to satisfactorily resolve his complaints and grievances and for failing to authorize stent surgery. Plaintiff does not state what he asked one or all of these defendants to do or whether he made his request(s) orally or in writing to each defendant; rather, plaintiff states these three TDCJ officials authorized the deliberate indifference in his medical care by not overturning the decision to deny him stent surgery. Further, plaintiff does not give any reason why he thinks these defendants' failure to resolve his complaints violated his constitutional rights. To the extent plaintiff was complaining of the surgery he did not receive from the medical personnel at his unit, the acts of subordinates trigger no individual section 1983 liability for supervisory officers. *Champagne v. Jefferson Parish Sheriff's Office*, 188 F.3d 312, 314 (5th Cir. 1999). A supervisory official may be held liable only when he is either personally involved in the acts causing the deprivation of a

person's constitutional rights, or there is a sufficient causal connection between the official's act and the constitutional violation sought to be redressed. *Thompkins v. Belt*, 828 F.2d 298, 304 (5th Cir.1987); *Douthit v. Jones*, 641 F.2d 345, 346 (5th Cir.1981) (per curiam). Plaintiff has alleged no fact demonstrating personal involvement by these officials and has alleged no fact showing any causal connection between their acts or omissions and the alleged constitutional violation. To the extent plaintiff was complaining of the medical care he received in any complaint or grievance filed, plaintiff's allegations do not show why prison officials were not entitled to depend on the judgment of qualified medical personnel providing medical care to plaintiff.

Plaintiff has failed to state a claim against the three TDCJ supervisors who "rubber stamped" the medical treatment he received because they were not personally involved in the medical decision to deny him stents, nor has plaintiff stated a constitutional violation existed in the denial of the stent surgery. Further, plaintiff has failed to state a claim against the doctors and nurses employed by TDCJ because medical malpractice or negligence in choosing one medical solution (amputation) over another (stents) does not constitute deliberate indifference. Even if cost considerations played some role in making the treatment decision, so long as medical care was provided to plaintiff to treat his condition, there is not a constitutional violation. Although plaintiff rejects amputation as a treatment for his condition, it is a treatment for ulcers caused by DVT, as is the continued wound care he received upon rejecting that course of treatment.

## IV.
## RECOMMENDATION

For the reasons set forth above and pursuant to Title 28, United States Code, sections 1915A and 1915(e)(2), as well as Title 42, United States Code, section 1997e(a), it is the RECOMMENDATION of the Magistrate Judge to the District Judge that the Civil Rights

Complaint by plaintiff JIMI CURB filed pursuant to Title 42, United States Code, section 1983 be DISMISSED FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED.

Plaintiff may utilize the period for filing objections in which to amend his pleadings to cure his deficient claim(s) or he may file objections to these Findings, Conclusions and Recommendation. If plaintiff elects to amend his pleadings, he must utilize the form for filing a civil rights action and must fully set forth all claims and allegations on the amended pleading, not incorporating by reference any previously filed documents.

V.
INSTRUCTIONS FOR SERVICE

The United States District Clerk is directed to send a copy of this Findings, Conclusions and Recommendation to each party by the most efficient means available.

IT IS SO RECOMMENDED.

ENTERED on October 4, 2018.

_____
LEE ANN RENO
UNITED STATES MAGISTRATE JUDGE

## *<u>NOTICE OF RIGHT TO OBJECT</u>*

Any party may object to these proposed findings, conclusions and recommendation. In the event parties wish to object, they are hereby NOTIFIED that the deadline for filing objections is fourteen (14) days from the date of filing as indicated by the "entered" date directly above the signature line. Service is complete upon mailing, Fed. R. Civ. P. 5(b)(2)(C), or transmission by electronic means, Fed. R. Civ. P. 5(b)(2)(E). **Any objections must be filed on or before the fourteenth (14th) day after this recommendation is filed** as indicated by the "entered" date. *See* 28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b)(2); *see also* Fed. R. Civ. P. 6(d).

Any such objections shall be made in a written pleading entitled "Objections to the Findings, Conclusions and Recommendation." Objecting parties shall file the written objections with the United States District Clerk and serve a copy of such objections on all other parties. A party's failure to timely file written objections to the proposed findings, conclusions, and recommendation contained in this report shall bar an aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings, legal conclusions, and recommendation set forth by the Magistrate Judge in this report and accepted by the district court. *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996); *Rodriguez v. Bowen,* 857 F.2d 275, 276-77 (5th Cir. 1988).